UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUADALUPE CABRERA MEJIA,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03143-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Guadalupe Cabrera Mejia's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court grants the petition in part and denies it in part.[1]

## I. BACKGROUND

Cabrera Mejia is a native and citizen of Mexico. Dkt. No. 9 at 1. In 2007, U.S. Border Patrol agents encountered her in Arizona on three separate occasions, and each time she was

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

granted voluntary return to Mexico. *Id.* at 2. She later returned to the United States without inspection at an unknown time and location. *Id.*

In June 2025, agents from U.S. Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI") encountered Cabrera Mejia at a grocery store in Omaha, Nebraska and arrested her. *Id.* Cabrera Mejia was served with a Notice to Appear on June 10, 2025, charging her as removable pursuant to Section 212(a)(6)(A)(i) (8 U.S.C. §1182(a)(6)(A)(i)) of the Immigration and Nationality Act ("INA"). *Id.*

On June 12, 2025, HSI filed a criminal complaint against Cabrera Mejia in the United States District Court for the District of Nebraska charging her with False Representation of a Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B). *Id.* Subsequently, "the Omaha Immigration Court administratively closed [her] removal proceedings because she was in federal custody." *Id.*

On July 23, 2025, Cabrera Mejia was indicted on three counts: (1) False Representation of a Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B); (2) Fraud and Misuse of False Identification Documents, in violation of 18 U.S.C. § 1546(b)(1); and (3) False Claim to U.S. Citizenship, in violation of 18 U.S.C. § 1015(e). *See United States v. Guadalupe Cabrera Mejia*, 8:25-cr-00144-BCB-RCC, Dkt. No. 17 (D. Neb. July 23, 2025). Cabrera Mejia pleaded guilty to Count 1, False Representation of a Social Security Number, *id.*, Dkt. No. 35 (D. Neb. Oct. 29, 2025), and her plea was accepted, *id.*, Dkt. No. 38 (D. Neb. Dec. 2, 2025). Cabrera Mejia was sentenced to 12 months' incarceration, and the Government dismissed the other two counts. *Id.*, Dkt. No. 47 (D. Neb. Feb. 13, 2026).

On May 13, 2026, the Department of Homeland Security ("DHS") filed a motion to re-calendar Cabrera Mejia's removal proceedings with the Omaha Immigration Court, and that motion was granted. Dkt. No. 9 at 3. On June 2, 2026, Cabrera Mejia was released from criminal

custody, transferred to ICE custody, and booked into the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.*

On June 19, 2026, Cabrera Mejia filed a petition for writ of habeas corpus in this district as part of a group of detainees. *See Zacarias-Barajas v. Hernandez*, 2:26-cv-02150-TLF, Dkt. No. 1 (W.D. Wash. June 19, 2026). On June 29, 2026, U.S. District Judge Tiffany M. Cartwright ordered Respondents to provide Cabrera Mejia a bond hearing within 14 days of her request for a bond hearing. *Id.*, Dkt. No. 12 (W.D. Wash. June 29, 2026).

Cabrera Mejia filed a request for a bond hearing, and on August 26, 2026, the Tacoma Immigration Court held a bond hearing pursuant to the order in *Zacarias-Barajas*. Dkt. No. 9 at 3–4. Immigration Judge ("IJ") John Odell found that Cabrera Mejia did not meet her burden of showing that she was not a flight risk and denied bond. Dkt. No. 1 at 2; Dkt. No. 2 at 120–21.

Cabrera Mejia filed this petition for a writ of habeas corpus on September 2, 2026. Dkt. No. 1. Respondents[2] filed a return, Dkt. No. 8, and Cabrera Mejia filed a traverse, Dkt. No. 10.

## II. DISCUSSION

Cabrera Mejia argues that her due process rights were violated because the IJ did not provide her with a constitutionally sufficient bond hearing. Dkt. No. 1 at 15. She contends that the IJ "abused [his] discretion in finding her to be a flight risk without explanation or analysis, and on factors that, as a matter of law, do not justify this conclusion." *Id.* Cabrera Mejia also argues that she should not be required to exhaust her administrative remedies. *Id.* at 8–11. She requests an order requiring her immediate release, a declaration that her "detention without an individualized

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

determination before neutral decisionmaker violates the Due Process Clause of the Fifth Amendment," and "explicit leave" for her counsel to seek attorney's fees under the Equal Access to Justice Act ("EAJA"). *Id.* at 17.

Respondents "do[] not oppose [Cabrera Mejia's] assertion that her detention is governed by 8 U.S.C. § 1226(a)." Dkt. No. 8 at 2. Still, they argue that she is not entitled to habeas relief because she "fails to present the legal arguments or individualized circumstances required to excuse her failure to exhaust administrative remedies." *Id.* They contend that the petition should be denied, or in the alternative, the Court should order the IJ to issue a written bond decision. *Id.*

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion Is Not Required**

Respondents contend that the Court should require Cabrera Mejia to exhaust her administrative remedies by pursuing her bond denial appeal with the Board of Immigration Appeals ("BIA"). Dkt. No. 8 at 5–9. They argue that if she had appealed, the IJ would have prepared a written decision, which was "necessary to develop the record and clarify the IJ's reasoning." *Id.* at 6. They also argue that the BIA is equipped to resolve issues with constitutional implications like those presented here, and Cabrera Mejia "challenges a fact-specific bond determination that lacks any novel legal question or broader guidance value beyond the circumstance presented here." *Id.* at 6–7. According to Respondents, the "BIA can review bond determinations and could preclude the need for judicial review." *Id.* at 7.

Cabrera Mejia argues that the Court should waive prudential exhaustion because "further administrative record is not necessary to resolve her claims"; her due process challenge is "fundamentally a question of law" that the BIA lacks authority to adjudicate. Dkt. No. 1 at 9. She also contends that delays before the BIA are lengthy, and thus courts "should not delay review in favor of allowing the BIA to possibly correct an error." *Id.* at 10. She further argues that "pursuit

of administrative remed[ies] would cause [her] irreparable injury and would be futile," in part because she has been in ICE detention since June 2, 2026, and her prolonged absence from her children "is causing their health to decline, pursuant to the opinion of their doctor." *Id.* at 11. She has submitted a letter from a Pediatric Nurse Practitioner who opines that the "emotional and psychological impact of their mother's removal has been profound." Dkt. No. 2 at 64. "The children have endured overwhelming distress, instability, and fear" in their mother's absence. *Id.*

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Specifically, the IJ's decision—and the utter lack of rationale justifying that decision, as discussed below—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26-

CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And unless most IJs begin issuing decisions with similarly deficient reasoning, there is no risk of encouraging deliberate bypass of the administrative scheme. *Id.* Furthermore, under the facts of this case, it is not difficult to conclude that Cabrera Mejia will suffer irreparable injury if her arguably unconstitutional detention continues while she awaits a BIA decision on the merits. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); Dkt. No. 1 at 9; Dkt. No. 2 at 64 (doctor note stating that "the emotional and psychological impact" of Cabrera Mejia's detention on her four children "has been profound," and "[h]er detention and potential deportation place these children at imminent risk of exceptional and extremely unusual hardships well beyond that which would ordinarily be expected from a parent's removal," including "severe disruption in critical medical treatment," among other things). Under all of these circumstances, the Court waives prudential exhaustion. *See, e.g.*, *Vasquez Lopez v. Hernandez*, No. 2:26-cv-0775-TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (waiving prudential exhaustion where noncitizen presented "health and family care reasons for concluding that irreparable injury would result from requiring her to remain in custody while appealing the denial of bond to the BIA").

**C. The IJ Abused His Discretion**

In her verified petition, Cabrera Mejia avers that during her bond hearing, "the IJ focused almost entirely on [her] conviction and did not once affirmatively engage with a single piece of her evidence." Dkt. No. 1 at 2. She states that the IJ "did not provide any reasoning connecting the criminal history to a flight risk finding, did not address the *Guerra* factors, and did not present any reasoning regarding why no conditions of release could sufficiently mitigate concerns about flight." *Id.* Her attorney, who was present at the hearing, confirms these facts in a sworn

declaration. *See generally* Dkt. No. 2. Specifically, Cabrera Mejia's attorney states that in the nine-minute hearing (which was not recorded), the IJ did not "affirmatively acknowledge any of M[s]. Cabrera Mejia's evidence," and at the end of the hearing, "IJ Odell stated that Ms. Cabrera Mejia had not met her burden of showing that she is not a flight risk, based solely on her criminal history." *Id.* at 3–4. According to Cabrera Mejia, the IJ "did not provide any reasoning regarding why, specifically, her criminal history makes her a flight risk and did not balance the positive evidence or explain why no conditions of release could mitigate the flight risk concern." Dkt. No. 2 at 4–5. Respondents do not dispute these facts. Dkt. No. 8 at 9–10.

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations

are reviewed for an abuse of discretion. *Id.* at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Id.* at 785 (citation modified).

1. <u>The IJ's Decision</u>

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1077–78 (W.D. Wash. 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1102 (W.D. Wash. 2026) (same).

Accordingly, Cabrera Mejia's allegation in her habeas petition—that Judge Odell abused his discretion when he determined that Cabrera Mejia was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review. Judge Odell's bond denial decision, issued on August 26, 2026, consists solely of a checkbox form in which "Flight Risk" is checked. Dkt.

No. 2 at 120–21. The form order does not mention the *Guerra* factors, much less consider them, or provide an explanation of the flight risk determination.

Judge Odell did not describe the burden of proof in his decision, and Judge Cartwright's order requiring a bond hearing did not require a specific burden of proof at the bond hearing. *Zacarias-Barajas*, Dkt. No. 12 (W.D. Wash. June 29, 2026). Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

The federal appellate courts that have addressed this question are split. The First and Second Circuits have held that the burden of proof for continued immigration detention must be placed on the government—but those Circuits do not agree on the standard of proof. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge* test before holding that with respect to a petitioner who had been in custody for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence).

The Third and Fourth Circuits have assigned the detainee the burden of proof on the questions of flight risk and danger to the community. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (holding that requiring a Section 1226(a) detainee to show that he or she is not a danger or the community or a flight risk by a preponderance of the evidence does not violate the

Due Process Clause); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277, 279 (3d Cir. 2018) (no due process violation with respect to burden remaining with detainee to show that he is not a danger to the community or a flight risk).

The Ninth Circuit has declined to require the government to meet a clear and convincing burden of proof to justify continued detention of a noncitizen in the specific context of a second bond hearing under Section 1226(a). *Compare Singh*, 638 F.3d at 1203 (holding that "[g]iven the substantial liberty interest at stake" for noncitizens subject to prolonged detention under Section 1226(a), "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond"); *Martinez*, 124 F.4th at 786 (in a case involving a petitioner detained under Section 1226(c), describing *Singh* as "offer[ing] the high-water mark of procedural protections required by due process"); *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (noting that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under any immigration detention statute," and concluding that the Due Process Clause did not entitle the petitioner "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence").

2. <u>Abuse of Discretion</u>

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence, the Court finds that Judge Odell abused his discretion in this case. *See Martinez*, 124 F.4th at 779. The record before the Court is wholly devoid of any indication that Judge Odell considered the *Guerra* factors in making a flight-risk determination, or that he considered any of the evidence submitted by Cabrera Mejia in relation to the bond hearing. Cabrera Mejia submitted documentation including letters of support from her sponsor, her longtime landlord, her pastor, and her family members and friends; birth certificates for her three U.S.

citizen children; and a letter of support from her children's Certified Primary Care Pediatric Nurse Practitioner. Dkt. No. 2 at 9–64. For its part, the government submitted only Cabrera Mejia's Form I-213 and evidence of her conviction. *Id.* at 68–118. At the hearing, "the government attorney stated that Ms. Cabrera Mejia was a flight risk because of her criminal history but did not make any argument." *Id.* at 4. Cabrera Mejia has presented evidence that IJ Odell relied solely on her criminal conviction without discussing the other *Guerra* factors or the evidence she presented, and without explaining any link between her criminal history and his flight risk conclusion. Dkt. No. 1 at 2; Dkt. No. 2 at 4–5. Respondents do not dispute those factual assertions or argue that Cabrera Mejia's conviction alone was enough to support a flight risk finding. *See generally* Dkt. No. 8.

For all these reasons, Judge Odell failed to accord Cabrera Mejia the process due to her, abusing his discretion and violating her Fifth Amendment rights. *See Cardoza-Garcia v. Hernandez*, No. 2:26-cv-02573-JHC, 2026 WL 2294541, at *4 (W.D. Wash. Aug. 10, 2026) (finding that IJ Odell abused his discretion in finding that petitioner was a flight risk when he failed to apply the *Guerra* factors, meaningfully engage with petitioner's evidence, or explain why, in light of that evidence, no amount of bail would be sufficient).

**D. Remedy**

Having found a due process violation, the Court considers the appropriate remedy. Cabrera Mejia requests immediate release from custody. Dkt. No. 1 at 17. Respondents argue that the "proper remedy" is not release, "but rather an order directing the IJ to issue a written bond memorandum clearly setting forth the reasoning for finding the Petitioner a flight risk." Dkt. No. 8 at 10. However, this is not a case where the record needs to be further developed to determine if a due process violation occurred. *See, e.g.*, *Lueth v. Scott*, No. 2:26-cv-01170-SKV, Dkt. No. 14 at 7 (W.D. Wash. May 1, 2026) (requiring exhaustion because "initiating an appeal was necessary to develop the record, to clarify the IJ's reasoning, and for the parties and this Court to discern

whether any constitutional error or harm transpired."). Whether in written form or not, due process requires the IJ to set forth his reasoning at the time of the bond hearing, *Garcia-Merino v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *4 (W.D. Wash. July 24, 2026), and as set forth above, Cabrera Mejia has provided *unrebutted* evidence that her bond hearing was constitutionally deficient. Under these circumstances, ordering release rather than a written decision is warranted. *See, e.g.*, *Cardoza-Garcia*, 2026 WL 2294541, at *5 (ordering release following a finding that the IJ abused his discretion in finding that petitioner was a flight risk); *see also, e.g.*, *Avila Garcia v. Scott et al.*, 2:26-cv-02307-BAT, Dkt. No. 9 at 8–9 (W.D. Wash. July 23, 2026) (ordering release when "the IJ failed to provide any rationale for his alternative finding of flight risk and failed to engage whatsoever with the factors weighing for or against such a finding"); *Garcia-Merino*, 2026 WL 2137819, at *4–5 (ordering release when the IJ "fail[ed] to give any reasoned explanation for his decision and . . . fail[ed] to apply the *Guerra* factors at the hearings").

Cabrera Mejia also requests a declaration that her "detention without an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment[.]" Dkt. No. 1 at 17. However, as set forth above, she did receive such a determination (albeit a deficient one). Dkt. No. 2 at 120–21. This request is therefore denied.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

(1) Respondents shall release Cabrera Mejia from custody within 24 hours under terms consistent with Section 1226(a);

(2) The parties shall file a Joint Status Report by September 28, 2026, confirming that Cabrera Mejia has been released;

(3) Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja,* 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See* Dkt. No. 1 at 3 (referring to Cabrera Mejia as "he," "his," and "him" in various places); *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 25th day of September, 2026.

Lauren King

Lauren King
United States District Judge